1   Howard Holderness, CA Bar No. 169814
    MORGAN, LEWIS & BOCKIUS LLP
2   1 Market Street, Spear Tower, 25th Floor
    San Francisco, CA 94105
3   (415) 442-1000 (Telephone)
    (415) 442-1001 (Facsimile)
4

5   Charles L. Babcock, IV, TX Bar No. 01479500
    JACKSON WALKER L.L.P.
    1401 McKinney, Suite 1900
6   Houston, Texas 77010
    Admitted Pro Hac Vice
7    (713) 752-4200
    (713) 752-4221
8

9   George L. McWilliams
    LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
10  TX Bar No. 13877000; AR Bar No. 68078
    406 Walnut, P.O. Box 58
11  Texarkana, ARK-TX 75504-0058
    Admitted Pro Hac Vice
12  (903) 277-0098 (Telephone)
    (870) 773-2967 (Facsimile)
13

14  Attorneys for Movant
    RICHARD FRENKEL

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17  ILLINOIS COMPUTER RESEARCH, LLC,          Miscellaneous Action No.
        Plaintiff and Counterclaim Defendant,     CV 5:08-mc-80075-JF (HRL)
18
                                                **RICHARD FRENKEL'S REPLY TO**
19          vs.                                 **ICR'S AND HARRIS' RESPONSE**
                                                **TO FRENKEL'S AND CISCO'S**
20  FISH & RICHARDSON P.C.,                     **MOTION TO QUASH ICR'S**
        Defendant, Counterclaimant and Third    **SUBPOENA FOR DOCUMENTS**
21      Party Plaintiff,                        **AND TESTIMONY**

22          vs.                                 **DATE: MAY 13, 2008**
                                                **TIME: 10:00 A.M.**
23  SCOTT C. HARRIS,                            **COURTROOM 2**
        Third-Party Defendant and
24      Counterclaimant
                                                Hon. Magistrate Judge Howard Lloyd
25          vs.

26  FISH & RICHARDSON P.C.,
        Defendant, Counterclaimant, Third
27      Party Plaintiff and Counterclaim
        Defendant

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii-iv

I.      STATEMENT OF ISSUES ................................................................................. 1

II.     INTRODUCTION ............................................................................................... 1

III.    THE SUBPOENA SEEKS INFORMATION THAT IS NOT RELEVANT
        NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY
        OF ADMISSIBLE EVIDENCE IN THE CHICAGO CASE ................................... 4

IV.     THE SUBPOENA IS BROUGHT FOR AN IMPROPER PURPOSE ................... 7

V.      FRENKEL AND CISCO ARE NOT REQUIRED TO SUBMIT A
        PRIVILEGE LOG BEFORE THE COURT RULES ON FRENKEL'S
        OBJECTIONS TO THE SCOPE OF THE SUBPOENA ..................................... 8

VI.     FRENKEL IS ENTITLED TO FIRST AMENDMENT PROTECTION ............... 9

        A.      FRENKEL IS A JOURNALIST ................................................................. 9

        B.      THE FIRST AMENDMENT PROTECTS FRENKEL FROM
                COMPELLED DISCOVERY ................................................................. 12

VII.    ISSUERS' ARGUMENT THAT FEDERAL COMMON LAW APPLIES
        IS UNAVAILING ........................................................................................... 14

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3    *American Society for the Prevention of Cruelty to Animals v. Ringling Brothers &*
      *Barnum & Bailey Circus,*
4        233 F.R.D. 209 (D.D.C. 2006) ............................................................. 8

5    *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,*
         244 F.3d 189 (1st Cir. 2001) ............................................................. 7
6

     *In re Calif. Public Utilities Commission,*
7        892 F.2d 778 (9th Cir. 1989) ............................................................. 15

8    *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,*
         163 F.R.D. 329 (N.D. Cal. 1995) ....................................................... 5
9

     *Cusumano v. Microsoft Corp.,*
10       162 F.3d 708 (1st Cir. 1998) ............................................................. 10

11   *Dart Industries Co. v. Westwood Chemical Co.,*
         649 F.2d 646 (9th Cir. 1980) ............................................................. 6
12

     *First Pacific Networks, Inc. v. Atlantic Mutual Insurance Co.,*
13       163 F.R.D. 574 (N.D. Cal. 1995) ....................................................... 15

14   *Gray v. Derderian,*
         371 F. Supp. 2d 98 (D.R.I. 2005) ...................................................... 11
15

     *Hickman v. Taylor,*
16       329 U.S. 495 (1947) .......................................................................... 5

17   *Katz v. Batavia Marine & Sporting Supplies, Inc.,*
         984 F.2d 422 (Fed. Cir. 1993) ........................................................... 5
18

     *Kingsley International Pictures Corp. v. Regents,*
19       360 U.S. 684, 79 S. Ct. 1362 (1959) ................................................. 12

20   *Laxalt v. McClatchy,*
         116 F.R.D. 455 (D. Nev. 1986) ......................................................... 6
21

     *Lion Manufacturing Corp. v. Chicago Flexible Staff Co.,*
22       106 F.2d 930 (7th Cir. 1939) ............................................................. 14

23   *Micro Motion, Inc. v. Kane Steel Co, Inc.,*
         894 F.2d 1318 (Fed. Cir. 1990) ......................................................... 7
24

     *OAO Alfa Bank v. Center for Public Integrity,*
25       387 F. Supp. 2d 20 (D.D.C. 2005) .................................................... 11

26   *Platypus Wear, Inc. v. K.D. Co.,*
         905 F. Supp. 808 (S.D. Cal. 1995) .................................................... 15
27

28

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
                                              RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
                                              ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

*Schiller v. City of New York*,
    245 F.R.D. 112 (S.D.N.Y. 2007) ..................................................... 9, 11

*Shaklee Corp. v. Gunnell*,
    110 F.R.D. 190 (N.D. Cal. 1986) ..................................................... 14

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993)................................................. 10, 12, 13

*Silkwood v. Kerr-McGee Corp.*,
    563 F.2d 433 (10th Cir. 1977)........................................................ 10

*Summit Tech., Inc. v. Healthcare Capital Group, Inc.*,
    141 F.R.D. 381 (D. Mass. 1992)..................................................... 10

*Surfvivor Media, Inc. v. Survivor Productions*,
    406 F.3d 625 (9th Cir. 2005).......................................................... 5

*U.S. v. Philip Morris, Inc.*,
    347 F.3d 951 (D.C. Cir. 2003) ..................................................... 8, 9

*von Bulow v. von Bulow*,
    811 F.2d, 136 (2nd Cir.), *cert. denied*, 481 U.S. 1015 (1987) ............ 11

*Wyoming v. United States Department of Agriculture*,
    208 F.R.D. 449 (D.D.C. 2002)....................................................... 6

## STATE CASES

*Doe v. Cahill*,
    884 A.2d 451 (Del. Super. Ct. 2005) ............................................. 12

*Mitchell v. Superior Court*,
    37 Cal. 3d 268 (1984) ...................................................... 12, 13, 14

*New York Times Co. v. Superior Court*,
    51 Cal. 3d 453 (1990) ................................................................. 14

*O'Grady v. Superior Court*,
    139 Cal. App. 4th 1423 (Cal. App. 2006) ..................................... 9, 11

*Torgerson v. Journal/Sentinel, Inc.*,
    563 N.W.2d 472 (Wis. 1997)........................................................ 12

## FEDERAL STATUTES

28 U.S.C. § 1332(a)(1)...................................................................... 14, 15

28 U.S.C. § 1338(a) ........................................................................... 14

Fed. R. Civ. P. 26(b)(1)............................................................. 4, 5, 6, 7, 8

Fed. R. Civ. P. 26(b)(5)............................................................... 8, 9

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

1  

Fed. R. Civ. P. 45(c)(3)(A)(iv)................................................................. 5

2  

Fed. R. Civ. P. 501 ............................................................................... 15

3  

## MISCELLANEOUS

4  

*Mary-Rose Papandrea, Citizen Journalism and the Reporter's Privilege*, 91 Minn.
    L. Rev. 515, 590-91 (2007).................................................................. 10

5  

6  

N.D. Cal. Civil L.R. 37-2 ..................................................................... 7

7  

8  

9  

10  

11  

12  

13  

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28  

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

I.    **STATEMENT OF ISSUES – N.D. CAL. CIVIL L.R. 7-4(A)(3)**

Whether Richard Frenkel ("Frenkel"), a non-party witness, should be compelled to testify and produce documents.

II.    **INTRODUCTION**

If Richard Frenkel ("Frenkel") has caused Illinois Computer Research LLC ("ICR"), Scott C. Harris ("Harris") (collectively, "Issuers") or their lawyer Raymond P. Niro ("Niro") legally compensable injuries, then they should sue him. That way Frenkel will have notice of the allegations against him and will have an opportunity to respond both with pleadings and discovery under the supervision and rules of the court. What should not be allowed is this thinly disguised effort to conduct pre-suit discovery or investigation for other lawsuits when the requested information is not relevant or reasonably calculated to lead to the discovery of admissible evidence in the underlying suit.[1]

The Issuers' Response to Frenkel's and Cisco's Motions to Quash ICR's Subpoena for Documents and Testimony ("Response") and their now withdrawn Motion to Compel (N.D. Cal. Case 5:08-mc-80074-JF-HRL, docket no. 1) reveal, quite clearly we think, that the subpoena seeks information from Frenkel solely because of things he wrote on his Patent Troll Tracker website ("PTT"), which are characterized by Issuers as "attacks …on Harris" (Response p. 1), "not uplifting reading" (Response p. 4), "advanc(ing) his own agenda for personal gain" (Response p. 12), "violating ethical standards" *id.,* "promulgating propaganda favorable to [Cisco Systems, Inc. ("Cisco")]" (Response p. 13), making "childishly snide remarks" (Response p. 19), and causing "astonishingly, even death threats against [Raymond P. Niro ("Niro")]" (Response p. 4).

It all sounds pretty sinister but one wonders what this has to do with the underlying

---

[1] *Illinois Computer Research LLC v. Fish & Richardson, P.C.*, pending in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 07 C 5081 (the "Chicago case").

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

litigation.  The answer is nothing but speculation, conjecture, and surmise based upon alleged facts which Issuers now know <u>not</u> to be true.  At page 23 of the Response, Issuers address (finally) "why Frenkel's testimony is calculated to lead to admissible evidence in the trial of this case" and assert that "Frenkel had (and evidently still has) close ties with [Fish & Richardson, P.C. ("Fish")]...." Response p. 23.  In support, Issuers cite the program from a seminar where Frenkel and Fish lawyers Katherine Lutton ("Lutton") and John Steele ("Steele") were listed as faculty members. *Id.*

As the program reveals (Exhibit G to the Blouin Declaration attached to Issuers' Response), Frenkel, Lutton, and Steele were scheduled to appear at an Advanced Patent Law Institute seminar but were listed on different panels on different days.  Blouin Decl. Ex. G. Frenkel has testified that he has had no conversations with Lutton (at the seminar or otherwise) about the Chicago case or about Issuers and he has never spoken to Steele in his life.  Frenkel Supp. Decl. ¶¶ 2-5, 9.[2]  Lutton, who has been deposed in the Chicago case, agrees.  Blouin Decl. Ex. C p. 345.  In fact, she testified that she never discussed with Frenkel anything about Harris' or Fish's lawsuits.  *Id.* at 346.  She also denied having anything to do with the PTT articles and testified she didn't even read them.  *Id.* at 348; *see also* her denials at 350-51.  Her testimony is clear, positive and direct.  She was not, as Issuers charge, "unable to remember key facts relating to Frenkel's activities."  Response p 9.  What Lutton was unable to remember was whether she and Frenkel were on the Advanced Patent Law Institute seminar faculty (Blouin Decl. Ex. C p. 341-42) or whether she had spoken to him about the lawsuit in which Fish represents Cisco, not the Chicago case.  *Id.* at 344.  Steele has been deposed but Issuers chose not to attach his testimony.[3]

[2] Frenkel has requested leave to submit a supplemental declaration to respond to the factually incorrect assumptions Issuers rely on to support their subpoena.  Frenkel's Motion for Leave is incorporated by reference herein.

[3] Issuers do attach the deposition of Peter Devlin, a Fish partner.  Blouin Decl. Ex. D.  Issuers do not cite the deposition in their response and Frenkel is not mentioned once.

It is said by Issuers that Michelle Lee ("Lee"), Google's Head of Patent and Patent Strategy,[4] was also on the faculty (she wasn't; she was only on the planning committee). Blouin Decl. Ex. G p. 4. Frenkel does not know Lee, has never spoken to her about anything, and certainly not about Issuers or the Chicago lawsuit. Frenkel Supp. Decl. ¶¶ 11-12.

As further proof of Frenkel's "close ties" with Fish is the allegation (without any supporting evidence) that Frenkel, Lutton, and John Dragseth appeared together on a May 30, 2007 webinar. Response p. 23. A webinar is a seminar where the panelists and audience are in different locations and the program is conducted over the web. Even if true, this does not contradict Frenkel's declaration that he has not spoken with anyone at Fish about Issuers or the Chicago case. This would include Dragseth, whom Frenkel does not know and has never met outside of the May 2007 webinar. Frenkel Supp. Decl. ¶ 9.

Finally, Issuers point out that Fish represents Cisco in a lawsuit and that Lutton moved to be admitted *pro hac vice* in that case although she is not lead counsel. Blouin Decl. Ex. H. Frenkel is not directly involved in that litigation although a lawyer he supervises is. Frenkel Supp. Decl. ¶ 14. Discussions between Frenkel and Fish, to the extent there were any, about that litigation would be privileged of course but, whether privileged or not, Frenkel has never spoken to anyone at Fish about Issuers or the Chicago case. Frenkel Supp. Decl. ¶ 2-5.[5]

Although Issuers may be ready to limit the scope of the subpoena (Response pp. 24-25), (we're not sure) it was not so limited when served or when George McWilliams, Frenkel's

---

[4] Google was the original defendant in the Chicago case but has been dismissed. N.D. Ill. 1:07-cv-05081, docket nos. 16, 32. Issuers speculate that "possibly Google" encouraged Frenkel to "target" Harris, his lawyers and owners of the Harris patents." Response p. 23.

[5] Frenkel has denied Issuers' speculation in his supplemental declaration. Frenkel states: "I had no involvement in the alleged tortious interference with Issuers' licensing and enforcement of the Harris patents or in allegedly defaming Harris nor did Fish or Google use me as 'a vehicle' to do anything." Frenkel Supp. Decl. ¶ 13.

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

counsel, attempted to negotiate a compromise with opposing counsel Karen Blouin. So on its face the subpoena calls for all documents and conversations between Frenkel and Fish, an overbroad effort to pierce protected conversations and documents regarding unrelated litigation where Fish represents Cisco. Under those circumstances, a privilege log is not required. With respect to the PTT, the subpoena is overbroad and harassing and a privilege log is not required in response to a claim of journalist's privilege.

The issue of journalists' privilege is a thorny one as the briefing indicates. Whether Frenkel is entitled to the protection accorded a member of the press will be directly at issue in the Texas litigation and perhaps in some other jurisdiction if "a federal judge's son" (Ward) (Response p. 3) chooses to refile his defamation case against Frenkel. Ward has moved to dismiss, without prejudice, Frenkel from the Arkansas litigation. Babcock Supp. Decl. ¶ 1. If the Court reaches the matter (and you need not if you conclude the subpoena is outside the scope of Federal Rule of Civil Procedure 26), your decision could have important ramifications for Frenkel and other non-traditional journalists, especially as to whether a person in Frenkel's position enjoys First Amendment protection. We think Issuers have taken a crabbed and legally incorrect view on the matter for self-serving reasons, and explain why they are mostly wrong below.

There is no basis to take Frenkel's deposition. If a deposition is allowed, it should be limited to the topic of whether he ever had any communication with anyone at Fish about the Issuers or the Chicago case – fifteen minutes should suffice.

III.    **THE SUBPOENA SEEKS INFORMATION THAT IS NOT RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE IN THE CHICAGO CASE (REPLY TO RESPONSE AT PP. 22-25)**

Issuers claim that Frenkel "does not even seriously challenge the relevance of the discovery ICR [and Harris] seeks [sic]." Response p. 23. The pleadings conclusively refute this assertion.

4

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

Not only did Frenkel strenuously object to Issuers' subpoena on the basis of relevancy in his Motion to Quash and for Protective Order (Frenkel Mot. to Quash pp. 3-4, 12, docket no. 1) and in objections served on Issuers' counsel (McWilliams Decl. ¶ 3, Ex. B-1, docket no. 5), but he also devoted a large portion of his response to Issuers' Motion to Compel to explaining why the discovery Issuers seek is not relevant to the Chicago case (N.D. Cal. Case 5:08-mc-80074-JF-HRL, docket no. 15, pp. 11-15 (attached as Exhibit "A" to Babcock's Supplemental Declaration)). That response, of course, is not formally before the Court because Issuers withdrew their Motion to Compel after wasting the Court's and Frenkel's time with an urgent request to advance the hearing date for the Motion to Compel (which was denied) because otherwise "substantial harm" would result. N.D. Cal. Case 5:08-mc-80074-JF-HRL, docket nos. 14, 3. Let there be no doubt: as Frenkel wrote in his motion to quash (page 3), "The subpoenaed testimony and documents have no apparent relevance to the Chicago case," referencing the Cisco motion which states (page 3) "The subpoena is overbroad and burdensome, is not relevant to any issue in the Chicago case nor would enforcement lead to the discovery of admissible evidence."

A subpoena must be quashed when it "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv). This Court has recognized that if a subpoena seeks information that is "not relevant or reasonably calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [the non-party] would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (emphasis in original) (quashing portions of subpoena that requested material irrelevant to plaintiff's claims). Relevancy for purposes of discovery is broadly construed under Federal Rule of Civil Procedure 26, but the right to discovery is not unlimited. *See Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (upholding magistrate judge's order limiting discovery based on relevance); *Katz v. Batavia*

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

*Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Relevancy for the purposes of Rule 26 is broadly construed. … However, the potential for discovery abuse is ever-present, and courts are authorized to limit discovery to that which is proper and warranted in the circumstances of the case.") (citation omitted). This is especially true when discovery is sought from non-parties to litigation. Indeed, it is "well established that nonparties to litigation enjoy greater protection from discovery than normal parties." *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986); *see Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (holding that discovery should be "limited" to "protect" non-parties from "harassment, inconvenience, or disclosure of confidential documents").[6]

The Issuers failed attempt to show some connection between Frenkel and the parties and purported facts at issue in the Chicago case – first in their Motion to Compel (since withdrawn) and now in their Response – reveals no legally sufficient connection to justify the discovery. Indeed, the only connection is that Frenkel commented on the Chicago lawsuit, Issuers, and Niro. *See, e.g.,* Response p. 4-6 (listing "a sampling" of Frenkel's PTT articles, which Issuers consider "not uplifting reading"). For this they have attempted to create an excuse to take his deposition and to compel him to produce documents. It is improper to seek discovery, especially from a non-party, for purposes of harassment. *See Dart Industries Co.*, 649 F.2d at 649 (holding that discovery should be "limited" to "protect" non-parties from "harassment"). Issuers have nothing – other than improper, conclusory attorney argument (and certainly no evidence) – to support their claim that testimony and documents from Frenkel are relevant to the Chicago case or calculated to

---

[6] Moreover, when First Amendment rights are at stake, as they are here, courts apply a heightened relevance standard to give more protection to First Amendment values. *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002) (holding that when a First Amendment privilege claim is asserted, the relevance standard is more exacting than the minimal showing of relevance under Rule 26(b)(1), and therefore the information sought must go to "the heart of the lawsuit").

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

lead to the discovery of admissible evidence in the Chicago case. In this manner, Issuers violate this Court's Local Rule 37-2 because such conclusory attorney argument is insufficient to establish the relevancy of the information sought. N.D. Cal. Civil L.R. 37-2 ("[The party requesting discovery] must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Federal Rule of Civil Procedure 26(b)(2) are satisfied.").

It is well established that "requested information is not relevant to [or reasonably calculated to lead to the discovery of admissible evidence in] the pending action if the inquiry is based on the [requesting] party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("[A] party may not undertake wholly exploratory operations in the vague hope that something helpful will turn up."). Further, the use of a subpoena to uncover evidence to show that a plaintiff has a legitimate claim is improper. *Micro Motion, Inc.*, 894 F.2d at 1327 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim") (emphasis added) (citations omitted). More is required than a bare allegation before a non-party will be required to "undertake financial burdens and risks to further a plaintiff's case." *Id.*

## IV.   THE SUBPOENA IS BROUGHT FOR AN IMPROPER PURPOSE (REPLY TO RESPONSE P. 22)

The subpoena calls for testimony that would surely aid the Issuers or their counsel in, as yet unfiled, libel litigation against Frenkel and Cisco: ("Factual bases (sic) for the…articles"; "Investigative materials, sources for and procedure for PTT blog articles"; "the origin and history of the PTT blog"; "The decisions on subjects…Harris, Niro (and others)"). The information might also be useful in the Arkansas and Texas defamation cases as well.

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

1      Issuers revealed their improper motive when they caustically reject what we thought was a

2   reasonable proposal that any deposition not be shared with persons associated with the Arkansas

3   and Texas litigation.  They call the request "extraordinary" and say the court has no authority to

4   "regulate discovery in two different lawsuits."  Response p. 22.  With this last point, we agree.

5   This discovery is sought in the Chicago case which this court can certainly regulate.  It is not under

6   the supervision of the "two different lawsuits," which is precisely the point.

7

8      We would have thought that the Issuers would have agreed with this request and the fact

9   that they do not is quite telling.

10  **V.      FRENKEL AND CISCO ARE NOT REQUIRED TO SUBMIT A PRIVILEGE LOG
11          BEFORE THE COURT RULES ON FRENKEL'S OBJECTIONS TO THE SCOPE
            OF THE SUBPOENA (REPLY TO RESPONSE AT PP. 7-10)**
12
        Issuers fault Frenkel and Cisco for failing to submit a privilege log.  Response pp. 7-10.
13
    Frenkel has, however, objected to the scope of the entire subpoena because, in his view, it seeks
14
    information that is not relevant or reasonably calculated to lead to the discovery of admissible
15
16  evidence, as discussed in Section III.  Frenkel Mot. to Quash pp. 3-4, 12, docket no. 1;

17  McWilliams Decl. ¶ 3, Ex. B-1, docket no. 5; N.D. Cal. Case 5:08-mc-80074-JF-HRL, docket no.

18  15, pp. 11-15.  Where, as here, a party objects to a discovery request as seeking privileged
19
    materials and objects to the scope of the discovery request, the party need not submit a privilege
20
    log unless and until the court rules on its objections.  *U.S. v. Philip Morris, Inc.*, 347 F.3d 951, 954
21
22  (D.C. Cir. 2003) (citing FED. R. CIV. P. 26(b)(5) 1993 advisory committee's notes); *see also Am.*

23  *Society for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233

24  F.R.D. 209, 213 (D.D.C. 2006) ("It should go without saying that there is no obligation to assert a

25  privilege for documents ... that are outside of the scope of what could permissibly be requested.").

26      Frenkel believes that the entire subpoena goes beyond the scope of what could permissibly
27
    be requested under Federal Rule of Civil Procedure 26.  Accordingly, any duty he or Cisco has to
28

8

submit a privilege log does not arise unless and until the Court determines that the subpoena seeks information that is "otherwise discoverable." FED. R. CIV. P. 26(b)(5)(A); *Philip Morris, Inc.*, 347 F.3d at 954.

Moreover, contrary to Issuers' contention (for which they cite no authority), a party claiming protection under the Reporter's Privilege doctrine simply has no duty to submit a privilege log describing the nature of the documents. *See Schiller v. City of New York*, 245 F.R.D. 112, 118 (S.D.N.Y. 2007) (rejecting party's claim that Reporter's Privilege had been waived because the party claiming the privilege failed to raise it in a privilege log). Indeed, it would defeat the purpose of the Reporter's Privilege doctrine – to protect the identity of confidential sources and unpublished information – if Frenkel were to identify the documents he claims are privileged. Accordingly, the Court should reject Issuers' claims that Frenkel and Cisco have waived the privileges they assert by not submitting privilege logs.

**VI.    FRENKEL IS ENTITLED TO FIRST AMENDMENT PROTECTION (REPLY TO RESPONSE AT PP. 10-14, 18-20)**

A.    FRENKEL IS A JOURNALIST (REPLY TO RESPONSE AT PP. 10-14, 19-20)

Issuers ask this Court to lay down a bright-line rule that someone who has no education nor training in journalism is not a journalist and therefore is not entitled to protection under the First Amendment or California law. They argue that someone who allegedly does not adhere to the Society of Professional Journalists Code of Ethics cannot be a journalist and therefore cannot be protected. Of course, Issuers cite no authority for either proposition, hoping that the Court will disregard well-established case law recognizing that such a rule is not viable.

Courts have long understood that persons engaged in the dissemination of news and opinion on matters of public concern are entitled to full protection under constitutional, federal, and state law whether they are members of the traditional media or not. *See, e.g., O'Grady v.*

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS' RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

*Superior Court*, 139 Cal. App. 4th 1423, 1432 (Cal. App. 2006) (author of news-oriented website entitled to protection under Reporter's Privilege doctrine and California Shield law); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998) (professors and academic researchers); *Shoen v. Shoen*, 5 F.3d 1289, 1290-91 (9th Cir. 1993) (author of investigative book); *Summit Tech., Inc. v. Healthcare Capital Group, Inc.*, 141 F.R.D. 381, 384 (D. Mass. 1992) (independent research consultant); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 436-37 (10th Cir. 1977) (documentary filmmaker); *see also* Mary-Rose Papandrea, *Citizen Journalism and the Reporter's Privilege*, 91 MINN. L. REV. 515, 590-91 (2007) (arguing that "[t]o limit the reporter's privilege to traditional media outlets and professional journalists would unrealistically ignore how the public obtains its information today" and that "all those who disseminate information to the public must be presumptively entitled to invoke the privilege's protections").

Indeed, the Ninth Circuit has adopted a test for whether a person is entitled to protection under the Reporter's Privilege doctrine: "[W]hether the person seeking to invoke the privilege had 'the intent to use material — sought, gathered or received — to disseminate information to the public and [whether] such intent existed at the inception of the newsgathering process.'" *Shoen*, 5 F.3d at 1293 (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2nd Cir.), *cert. denied*, 481 U.S. 1015 (1987)). As the author of the PTT, Frenkel is and was engaged in seeking, gathering, and receiving information of interest to the patent community and the public with the intent – which intent existed at the inception of the newsgathering process – to disseminate it to the public on the PTT. Frenkel Decl. ¶¶ 3-5, 9, 15-17; Frenkel Supp. Decl. ¶ 15. Issuers do not dispute that Frenkel meets *Shoen* test. In fact, Issuers cite in their Response an article from the PTT in which Frenkel explained his role as reporter: "I posted Fish & Richardson's allegations against him. But those were F&R's words, not my own. ... And if F&R does sue Niro, personally, I'll <u>report</u> about it here. Which is not disparaging him, just <u>reporting</u>." ... "I posted about how Niro secured a

1    permanent injunction that was stayed in light of BMC v. Paymentech. True!" ... "I reported that

2    [Niro] represents Acacia in a bit of patent litigation. All true." Response p. 5 (emphasis added).

3        Moreover, the Second Circuit rejected the same argument Issuers make here when it stated:

4

5        Although prior experience as a professional journalist may be persuasive
         evidence of present intent to gather for the purpose of dissemination, it is not the
         sine qua non. The burden indeed may be sustained by one who is a novice in the
6        field.    Further, the protection from disclosure may be sought by one not
         traditionally associated with the institutionalized press because '[t]he informative
7        function asserted by representatives of the organized press ... is also performed by
         lecturers, political pollsters, novelists, academic researchers, and dramatists.' It is
8        beyond peradventure that '[l]iberty of the press is the right of the lonely
         pamphleteer who uses carbon paper or a mimeograph just as much as of the large
9        metropolitan publisher who utilizes the latest photocomposition methods.

10

11    von Bulow, 811 F.2d at 144-45 (quoting Branzburg v. Hayes, 408 U.S. 665, 704-05 (1972)).

12        In addition, courts are not proper forums to decide what is legitimate journalism, as the

13    O'Grady court observed, "We decline the implicit invitation to embroil ourselves in questions of

14    what constitutes "legitimate journalis[m]." ... We can think of no workable test or principle that

15    would distinguish "legitimate" from "illegitimate" news. Any attempt by courts to draw such a

16    distinction would imperil a fundamental purpose of the First Amendment ..." O'Grady, 139 Cal.

17    App. 4th at 1457. Also, the fact that a journalist expresses an opinion – even an unwelcome

18

19    opinion – does not mean he or she cannot invoke the Reporter's Privilege doctrine. Schiller, 245

20    F.R.D. at 119 (observing that the "touchstone" of whether to apply the Reporter's Privilege

21    doctrine is not "whether the journalistic enterprise was 'unbiased'; by that standard, few, if any,

22    daily newspapers could assert the privilege").

23        Nor can it be said that failing to follow the tenets of organized journalism has any effect on

24    whether a person qualifies as a journalist under the law. See Gray v. Derderian, 371 F.Supp.2d 98,

25

26    108 (D.R.I. 2005) (holding that alleged breach of journalism ethics "cannot form the basis of legal

27    action undertaken by [p]laintiffs against [defendant]"); OAO Alfa Bank v. Center for Public

28

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

1    *Integrity*, 387 F. Supp. 2d 20, 56 (D.D.C. 2005) (disregarding expert testimony that journalist

2    "violated journalism ethics" and did not "hold[ ] up to normal standards of investigative reporting"

3    because alleged ethical lapses do not by themselves have any legal effect); *Torgerson v.*

4    *Journal/Sentinel, Inc.*, 563 N.W.2d 472, 484 (Wis. 1997) ("A court's role is to interpret and apply

5    the law, not to enforce standards of journalistic accuracy or ethics.").

6

7            Although Issuers and their counsel may have viewpoints contrary to what is expressed on

8    the PTT, that fact does not mean Frenkel is not entitled to protection as a journalist under the

9    Reporter's Privilege doctrine and California law. *Kingsley Int'l Pictures Corp. v. Regents*, 360

10   U.S. 684, 688, 79 S.Ct. 1362 (1959) (prohibiting content-based discrimination under the First

11   Amendment because "the First Amendment's basic guarantee is of freedom to advocate ideas").

12   Nor does the fact that many of Frenkel's articles on the PTT were not signed.[7]  The Court should

13   reject Issuers' invitation to rule that a person in Frenkel's position does not enjoy protection from

14   compelled disclosure of his confidential sources and unpublished information.

15

16           B.      THE FIRST AMENDMENT PROTECTS FRENKEL FROM
                     COMPELLED DISCOVERY (REPLY TO RESPONSE AT PP. 20-21)
17

18           Issuers argue that Frenkel is not protected by the Reporter's Privilege doctrine derived

19   from the First Amendment and recognized by the Ninth Circuit in *Shoen* and by the California

20   Supreme Court in *Mitchell v. Superior Court* because it does not apply here, Frenkel is not a

21   reporter, and Frenkel "already has been muzzled by Cisco." Response pp. 20-21.  Issuers are

22   wrong on all accounts.

23

24

25   [7] This is hardly unusual as "internet speech is often anonymous." *See Doe v. Cahill*, 884
     A.2d 451, 456 (Del. Super. Ct. 2005).  Nor is anonymous speech a new phenomenon but
26   has been employed as a literary device throughout history. *See, e.g.*, THE FEDERALIST
     PAPERS (Penguin 1987 ed.) (1788) (series of 85 anonymously published articles
27   advocating ratification of the U.S. Constitution subsequently revealed to be authored by
     James Madison, Alexander Hamilton, and John Jay).
28

                              RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
                     12       RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
                              ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

First, it is beyond dispute that the Ninth Circuit and the California Supreme Court have recognized a qualified privilege based on the First Amendment for reporters such as Frenkel. *Shoen*, 5 F.3d at 1292; *Mitchell v. Superior Court*, 37 Cal. 3d 268, 279 (1984). Issuers argue that "Frenkel's reliance on *Shoen* ignores the fact that in the underlying lawsuit there was a state libel action, present in federal court only because of diversity jurisdiction." Response p. 20. As discussed in Section VII below, that is precisely the procedural posture of the Chicago case: an action involving only state law claims in federal court because of diversity jurisdiction. Thus, Issuers' claim that *Shoen* does not apply here is untenable.

In addition, Issuers' claim that Frenkel cannot invoke the Reporter's Privilege doctrine because he is not a reporter is belied by the facts and the law, as discussed in Section V.A. above. Further, Issuers' contention that the Reporter's Privilege doctrine does not apply because "Frenkel has already been muzzled by Cisco" (Response p. 21) is without merit. Frenkel intends to resume publication of the PTT in the near future, continuing to report on news about patent litigation to the general public. Frenkel Decl. ¶ 9. Thus, he remains concerned that being forced to comply with Issuers' subpoena would have a significant chilling effect on his future ability to gather and disseminate news.

The constitutional Reporter's Privilege doctrine protects a reporter from being forced to testify or surrender materials regarding the newsgathering process unless the party seeking discovery shows that (1) the information sought is highly material and relevant to the inquiry at hand; (2) there is a compelling need for the information; and (3) the information is not obtainable from other available sources. *See, e.g., Shoen*, 5 F.3d at 1296. Issuers have not even attempted to make this showing here. Accordingly, the Reporter's Privilege protects Frenkel from Issuers' naked attempt to intrude upon his newsgathering and editorial processes.

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

However, Issuers may be correct that Frenkel's invocation of the California Shield Law is premature. Response p. 18. Although there is authority recognizing that "since contempt is generally the only effective way to ensure a non-party witness' compliance with an order for production the [California Shield Law] is in effect an absolute bar to compelled production," *Shaklee Corp. v. Gunnell*, 110 F.R.D. 190, 194 n.2 (N.D. Cal. 1986) (citing *Mitchell v. Superior Court*, 37 Cal. 3d 268, 274 (1984)), the *New York Times Co. v. Superior Court* decision relied on by Issuers is, candidly, at odds with this authority. 51 Cal. 3d 453, 455 (1990).

## VII. ISSUERS' ARGUMENT THAT FEDERAL COMMON LAW APPLIES IS UNAVAILING (REPLY TO RESPONSE AT PP. 14-15)

Issuers argue that federal common law, not state law, controls the decision on Frenkel's and Cisco's privilege claims because 28 U.S.C. § 1338(a) confers subject matter jurisdiction over the Chicago case. Response p. 14. Either Issuers do not understand the law on federal subject matter jurisdiction or they are being disingenuous. The Chicago court has subject matter jurisdiction over the Chicago case because there is diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). There simply are no claims arising under federal law in the Chicago case.

Although it once was true that the Chicago court had jurisdiction pursuant to 28 U.S.C. § 1338(a) – ICR initially sued Google for allegedly infringing on patents it claimed to own (Blouin Decl., Ex. A (Compl. for Patent Infringement)) – it was not true when Issuers subpoenaed Frenkel and it is not true now. ICR voluntarily dismissed with prejudice its patent law claim against Google on November 5, 2007, leaving only a state-law claim against Fish. N.D. Ill. 1:07-cv-05081, docket nos. 16, 32. All other claims asserted in the Chicago case arise under state law, not federal law.[8]

---

[8] Indeed, Fish's claim for a declaratory judgment against Issuers arises under state contract law, not federal patent law. *See, e.g., Lion Mfg. Corp. v. Chicago Flexible Staff Co.*, 106 F.2d 930, 932-33 (7th Cir. 1939) (holding employer's alleged equitable ownership of employee's patent invoked no federal jurisdiction because employer's claim did not arise under federal patent law).

N.D. Ill. 1:07-cv-05081, docket nos. 21, 27. Thus, Issuers' rationale for why federal law rather than state law governs the privilege claims in this case – that the Chicago case "is a federal question case" (Response p. 14) – simply is wrong.

Because jurisdiction over the Chicago case is conferred by 28 U.S.C. § 1332, evidentiary privileges are governed by state law, specifically, the law of the forum state. Fed. R. Civ. P. 501; *In re Calif. Public Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."); *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 577 (N.D. Cal. 1995) ("Because this court' subject matter jurisdiction over this case is based on diversity of citizenship, California law governs disposition of issues about the attorney-client privilege.").

Even if the Chicago case were "a federal question case," as Issuers claim, the fact remains that the claims for which Issuers seek discovery from Frenkel, tortious interference with prospective business relations and defamation, arise under state law, not federal law.[9] Case law is clear that when a party seeks evidence from a non-party – for which a claim of privilege has been asserted – and the evidence sought "goes only to [] state law theories of liability," the claim of privilege is governed by state law, not federal law. *Platypus Wear, Inc. v. K.D. Co.*, 905 F. Supp. 808, 811-12 (S.D. Cal. 1995). This is true even where the case is in federal court because of federal question jurisdiction. *Id.* Accordingly, Issuers' argument that Frenkel is not entitled to protection under the First Amendment and California law because federal common law governs is unavailing.

For the foregoing reasons, Frenkel respectfully requests that the Court grant Frenkel's and Cisco's Motions to Quash Subpoena and for Protective Order.

---

[9] Indeed, in explaining how discovery from Frenkel is relevant to the Chicago case, Issuers claim they need testimony and documents from Frenkel to determine whether "Fish or Google used Frenkel as a vehicle to aid or assist in the tortious interference with ICR's and Harris' licensing and enforcement of the Harris patents or in defaming Harris." Response p. 23-24.

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY

1

2    Dated: April 29, 2008                        MORGAN, LEWIS & BOCKIUS LLP

3                                                 By  /s/ Howard Holderness

4                                                    Howard Holderness

5                                                 Attorneys for Movant
                                                  RICHARD FRENKEL
6

7    Dated: April 29, 2008                        JACKSON WALKER L.L.P.

8                                                 By   /s/ Charles L. Babcock
                                                     Charles L. Babcock
9
                                                  Attorneys for Movant
10                                                RICHARD FRENKEL

11

12   Dated: April 29, 2008                        LAW OFFICE OF GEORGE L. MCWILLIAMS,
                                                  P.C.
13
                                                  By   /s/ George L. McWilliams
14                                                   George L. McWilliams

15                                                Attorneys for Movant
                                                  RICHARD FRENKEL
16

17

18

19

20

21

22

23

24

25

26

27

28

RICHARD FRENKEL'S REPLY TO ICR'S AND HARRIS'
                                                  RESPONSE TO FRENKEL'S AND CISCO'S MOTIONS TO QUASH
                                                  ICR'S SUBPOENA FOR DOCUMENTS AND TESTIMONY